UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

MARLBELIS RODRIGUEZ,                                    Civil Action No.: _____

                      Plaintiff,                        **VERIFIED
COMPLAINT**

    -against -

LE DISTRICT WINE BAR AND MARKET,

                     Defendant.
-------------------------------------------------------------------------X

       Plaintiff, MARLBELIS RODRIGUEZ (hereinafter referred to as "Plaintiff" or "Ms. Rodriguez"), by and through her attorneys, Nesenoff & Miltenberg, LLP, whose offices are located at 363 Seventh Avenue, 5th Floor, New York, New York 10001, alleges upon knowledge with respect to herself, and upon knowledge, information and belief as to all other matters, as follows:

### PRELIMINARY STATEMENT

       1.     This is a civil action brought on behalf of Plaintiff against Defendant Le District Wine Bar and Market (hereinafter referred to as "Defendant"), for pregnancy discrimination and disability discrimination in violation of the Pregnancy Discrimination Act ("PDA"), the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law (N.Y. Exec. Law 290 et. seq.) ("SHRL"), and the New York City Human Rights Law ("CHRL"), together with any and all other causes of action which can be reasonably inferred from the facts as set forth below.

### JURISDICTION AND VENUE

       2.     This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims

1

pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form a part of the same case or controversy between Plaintiff and Defendant.

3.    Venue is proper in this case pursuant to 28 U.S.C. § 1391 because a substantial part of the events which give rise to Plaintiff's claims took place in New York County, New York which is in the Southern District of New York.

4.    All conditions precedent to filing the instant action have been fulfilled. On or about February 22, 2017, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") which was cross-filed with the New York State Division of Human Rights. On or about August 31, 2017, the EEOC issued Plaintiff a Notice of Right to Sue ("RTS") which was received on or about September 6, 2017.

5.    This action is being brought within 90 days of Plaintiff's receipt of her RTS.

## PARTIES

6.    Plaintiff is a twenty-five (25) year old mother and resident of Bronx County, New York.

7.    At all times relevant, Plaintiff was an "employee" of Defendant as that term is defined by all applicable Federal, State, and local laws, including but not limited to: the PDA, the ADA, the SHRL, and the CHRL.

8.    Upon information and belief, Defendant is an entity specializing in the food and restaurant industry located at Brookfield Place, 225 Liberty Street, New York, New York 10281.

9.    At all times relevant, Defendant was Plaintiff's "employer" as that term is defined by all applicable Federal, State, and local laws, including but not limited to: the PDA, the ADA, the SHRL, and the CHRL.

2

## FACTUAL ALLEGATIONS

**Ms. Rodriguez Commences Employment with Defendant**

10.     Plaintiff commenced employment with Defendant in or around November 2015 as a cashier.

11.     As part of her job duties, Plaintiff was responsible for, among other things, checking out customers and finalizing customer purchases, as well as general customer service.

12.     Throughout her tenure with Defendant, Plaintiff's job title remained "cashier," although at times she would perform other tasks when she was not busy at the cash register.

13.     When Plaintiff first commenced employment with Defendant, she was supervised by Sebastian (last name unknown) ("Manager Sebastian").

14.     Initially, Ms. Rodriguez and Supervisor Sebastian worked well with one another and developed a positive and professional relationship.

15.     Plaintiff excelled at her position, and always performed her job duties in a satisfactory manner.

**Ms. Rodriguez Discovers She is Pregnant with Twins**

16.     In or around December of 2015, Ms. Rodriguez learned the happy news that she was pregnant with twins. Elated, Plaintiff immediately informed Manager Sebastian of her happy news.

17.     Initially, Manager Sebastian appeared happy for Plaintiff and congratulated Ms. Rodriguez on her pregnancy.

18.     As a result of her pregnancy, Plaintiff was forced to miss some work to attend her necessary prenatal doctor's appointments. Initially, Defendant took no issue with this and Manager

3

Sebastian understood when, on the rare occasion, Plaintiff arrived a few minutes late to work on account of her doctor's appointments.

19.     Plaintiff was pleased that Manager Sebastian seemed to respond so well to her news, and was happy to be able to continue working through her pregnancy to help support herself and her growing family.

**Defendant's New Supervisor Targets Plaintiff and**
**Places the Lives of Plaintiff's Unborn Children at Risk**

20.     In or around March of 2016, Defendant hired Ashley (last name unknown) ("Supervisor Ashley") who became another one of Plaintiff's supervisors. At that point, Plaintiff was in her first trimester and was noticeably pregnant.

21.     Upon information and belief, when Supervisor Ashley started, she immediately knew Plaintiff was pregnant as all of Plaintiff's co-workers knew and Plaintiff had a noticeable baby-bump.

22.     Unlike Manager Sebastian, Supervisor Ashley displayed an obvious disdain for Ms. Rodriguez and immediately subjected Ms. Rodriguez to heinous conditions which Defendant knew, or should have known, would have a detrimental effect on Plaintiff's health and pregnancy.

23.     Supervisor Ashley instituted new rules which allegedly applied to all employees but which, foreseeably, significantly adversely affected Ms. Rodriguez even though she was several months pregnant with twins.

24.     By way of example, Supervisor Ashley implemented a rule prohibiting employees from eating anything or drinking water at any time throughout their scheduled shifts, except during breaks. This rule was especially difficult for Plaintiff because, as a woman pregnant with twins,

drinking water and eating regularly throughout the day was not only necessary, but medically recommended.

25.     Supervisor Ashley showed no empathy and actually disciplined Ms. Rodriguez who repeatedly advised Supervisor Ashley that she could not safely abide by her new rules because of her pregnancy. In response, Supervisor Ashley disregarded Plaintiff and harshly reprimanded Ms. Rodriguez when she discovered a water bottle beside the cash register Plaintiff was using, despite her pregnant condition.

26.     As a result, Plaintiff experienced significant abdominal pains caused by, upon and belief, her inability to maintain a regular diet and water intake throughout the day.

27.     Plaintiff complained in tears to both Manager Sebastian and Supervisor Ashley that they were ganging up on her and that they needed to go easier on her because it was causing her elevated stress.

28.     Plaintiff also complained that she was pregnant and as such needed regular water intake but could not freely drink water due to Supervisor Ashley's new rules.

29.     Plaintiff's complaints proved fruitless – Defendant dismissed Plaintiff's pleas for help and ignored her continued complaints of unfair treatment based on her pregnancy.

30.     Bizarrely, after she asked for an exception to Defendant's no eating or drinking rule, even though she was supposed to be a cashier, Defendant further assigned Plaintiff labor intensive tasks such as, among other things: stocking and cleaning Defendant's freezer(s) and carrying heavy cake trays.

31.     Such tasks placed significant strain on Plaintiff's already vulnerable physical health.

**Plaintiff Experiences Severe and Negative**
**Side Effects Caused by Defendant's Unlawful Treatment**

32.     One day during work, Ms. Rodriguez noticed there had been a leak on Defendant's floor near the cash register where Plaintiff was working. Ms. Rodriguez brought the leak to Manager Sebastian's and Supervisor Ashley's attention however neither of her superiors seemed at all concerned or interested in addressing the problem.

33.     Although it was not Plaintiff's responsibility, Plaintiff took it upon herself to clean up the spill because she was afraid she would slip and fall, injuring both herself and her unborn twins.

34.     While Ms. Rodriguez was mopping the floor, she began to experience abdominal pains and noticed liquid dripping down her leg. Plaintiff became immediately concerned and called her doctor to make an emergency appointment.

35.     Approximately two (2) days later, Ms. Rodriguez visited her doctor and explained what was happening at work and what she experienced while mopping the spill at the cashiers' station.

36.     Plaintiff's doctor seemed immediately concerned and ran tests to check Plaintiff's amniotic fluids. The tests showed that Plaintiff's amniotic fluids were very low and that Ms. Rodriguez was anemic.

37.      After further examination, Plaintiff's doctor advised Ms. Rodriguez that her pregnancy was considered very "high-risk".

38.     Plaintiff's doctor strongly advised that Ms. Rodriguez take better care of herself moving forward.

39.     Plaintiff's doctor also gave Ms. Rodriguez a note for her to provide to Defendant regarding her medical needs and restrictions for the remainder of her pregnancy.

40.     Plaintiff's doctor advised that because of her high-risk pregnancy, she would need to visit more often and wanted to see her at least once a week.

**Defendant Laughs at Plaintiff's Medically**
**Required Need to Accommodate her High-Risk Pregnancy**

41.     After seeking the aforementioned medical attention, Plaintiff returned to work with the note from her doctor.

42.     The doctor's note mandated Plaintiff be able to take 15-minute breaks every two (2) hours throughout the day where she can drink water and rest, and also be provided with a chair to sit throughout her work day.

43.     Plaintiff submitted the note and accommodation request to Manager Sebastian, who then passed it off to Supervisor Ashley.

44.     Upon reading Plaintiff's doctor's note and request for accommodations for her high-risk pregnancy, Supervisor Ashley maliciously laughed at Ms. Rodriguez and stated "this is absurd, there is no way you can get a chair. I will pay you if you ever get a chair."

45.     Upon information and belief, supervisor Ashley's statement was meant to suggest that she would be so impressed if Plaintiff managed to get her accommodations, that she would reward Ms. Rodriguez with money.

46.     Supervisor Ashley further discussed and laughed at Plaintiff's medical requests with Ms. Rodriguez's co-workers, whom Defendant had no authority to disclose Ms. Rodriguez's personal medical needs to.

47.    Plaintiff felt absolutely hopeless after Defendant openly and maliciously rejected her need for accommodations, and could not help but cry at her situation.

48.    Upon information and belief, it would not have caused Defendant any hardship to grant Ms. Rodriguez's reasonable request for regular breaks and a chair.

49.    Indeed, upon information and belief, Defendant had previously afforded Ms. Rodriguez's co-cashiers with chairs to sit on throughout their work day.

50.    Further, upon information and belief, Defendant could have transferred Ms. Rodriguez to the dining area of the restaurant, or to Defendant's fish station, where she could have recorded customers' orders while remaining seated.

51.    Instead, Defendant chose to openly disregard Plaintiff's reasonable request for accommodations, and Supervisor Ashley reveled in Plaintiff's discomfort and medical strain while she worked on her feet at the cash register for eight hours a day at Defendant.

52.    Even worse, in addition to denying Plaintiff her medically necessary breaks, Supervisor Ashley began depriving Plaintiff of her regularly scheduled, legally mandated breaks throughout her shifts.

53.    Indeed, when Plaintiff asked to take her break, she was summarily prohibited from doing so while her non-pregnant co-workers were allowed to freely take breaks at their choosing.

54.    As a foreseeable consequence, Plaintiff sometimes worked through her scheduled breaks and, coupled with the prohibition placed on Ms. Rodriguez from eating or drinking while she worked, resulted in Plaintiff, who at the time was approximately five months pregnant, being forced to remain on her feet and deprived of food and drink for eight straight hours.

55.    In addition, Defendant likewise responded poorly to Plaintiff's need to visit her doctor more frequently and became further irritated with Ms. Rodriguez. Defendant went so far as

to threaten to terminate Plaintiff's employment for having to attend her pre-natal doctor appointments. As a result, Plaintiff was unable to attend several - at least ten - of her necessary doctor appointments for fear of losing her job.

**Defendant Purposefully Places Plaintiff in Positions**
**Posing a Known Danger to Plaintiff's Unborn Children**

56.     In addition to blatantly failing to accommodate Plaintiff's high-risk pregnancy, Defendant went out of its way to make Plaintiff's work environment *more* difficult and stressful on Ms. Rodriguez.

57.     By way of example, after Ms. Rodriguez submitted her doctor's note alerting Defendant to her high-risk pregnancy, Defendant regularly assigned Plaintiff to work in faster paced areas such as the cakes and ice cream departments.

58.     While working in the cake department, Ms. Rodriguez was required to constantly bend down to the floor and lift heavy cake trays from Defendant's storage freezer to then transport them to, and restock, Defendant's store floor refrigerator.

59.     Such work was unduly difficult for Ms. Rodriguez to perform in light of her high-risk pregnancy.

60.     Ms. Rodriguez repeatedly approached Manager Sebastian and told him that she could not perform heavy lifting tasks because of her high-risk pregnancy. Plaintiff and asked not to be assigned such tasks, which posed a danger to her unborn children.

61.     In response, Manager Sebastian appallingly gave Ms. Rodriguez an ultimatum and yelled at Plaintiff in front of Defendant's customers: "you have to do it or go home."

62.     By way of further example, Defendant frequently assigned Ms. Rodriguez to work at Defendant's Ice Cream Station, where she was provided with an exceedingly small stool to

perch on. The stool was so inadequate that Ms. Rodriguez had fallen off of it several times, causing her great concern for her own physical well-being, and that of her unborn babies.

63.     Plaintiff requested not to be assigned to the Ice Cream Station because of the dangerous risk it posed but her reasonable requests were again denied.

64.     Specifically, in response to her requests, Supervisor Ashley told Ms. Rodriguez that "it does not matter if you fall," and Supervisor Sebastian told Plaintiff that there was nothing he would do to help her.

**Supervisor Sebastian Refuses to Investigate Plaintiff's**
**Repeated Complaints of Discrimination and Harassment**

65.     Plaintiff remained hopeful that Manager Sebastian, whom she had previously held a positive relationship with, would be willing to help her.

66.     To that end, Ms. Rodriguez again approached Manager Sebastian and told him that Supervisor Ashley had been targeting her in the workplace and treating her horribly based on her pregnancy.

67.     Specifically, Ms. Rodriguez told Manager Sebastian that, among other things:

    i.    Supervisor Ashley spoke to and treated Plaintiff badly and very harshly;

    ii.   Supervisor Ashley was targeting Plaintiff in the workplace and Plaintiff believed it was because of her pregnancy;

    iii.  Plaintiff needed to get away from Supervisor Ashley and requested to be transferred under the direction of a different supervisor.

68.     In response, Manager Sebastian demanded that Plaintiff do as Supervisor Ashley told her to do.

69.     Manager Sebastian told Ms. Rodriguez that she had to "swallow" Supervisor Ashley's heinous treatment and if Plaintiff did not like it, she could quit.

70.     Ms. Rodriguez felt utterly hopeless as there was no one else to turn to who could make Supervisor Ashley stop her harassing and discriminatory behavior.

**Defendant Terminates Plaintiff's Employment**

71.     Throughout her employment under Supervisor Ashley's control, Supervisor Ashley would sneer and taunt Plaintiff that "it will be [her] time" soon.

72.     Plaintiff did not understand what Supervisor Ashley meant when she said this, and Supervisor Ashley would not explain what she meant any further. Indeed, when asked to clarify, Supervisor Ashley would only smirk and remark that Plaintiff would "know when her time came."

73.     Thereafter, on or about April 28, 2016, Supervisor Ashley pulled Ms. Rodriguez away from her shift at Defendant's customer service department and told Plaintiff she had a "surprise" for her. Curious, Ms. Rodriguez followed Supervisor Ashley to Manager Sebastian's office.

74.     At such time, Supervisor Ashley told Plaintiff to sit outside of Manager Sebastian's office and said: "good luck, it's your turn."

75.     Thereafter, Manager Sebastian brought Plaintiff into his office and began to tell her about how much he liked her. Manager Sebastian quickly changed direction, however, and told Plaintiff that Defendant had to let her go because Supervisor Ashley did not like her and because Ms. Rodriguez was not as efficient because she was pregnant.

76.     While Plaintiff was in a state of shock, Supervisor Sebastian attempted to persuade her to sign away her legal rights and offered to pay Ms. Rodriguez, off the books, for maternity leave so long as she did not sue.

77.     Ms. Rodriguez refused and left Defendant in tears.

78.     Upon information and belief, Plaintiff was replaced by a non-pregnant individual.

**Plaintiff Suffers Severe Emotional Turmoil and a**
**Horrendous Loss as a Result of Defendant's Unlawful Treatment**

79.     As a result of Defendant's horrid behavior and treatment of Plaintiff, Ms. Rodriguez suffered severe physical and emotional turmoil, which negatively impacted both her health and the health of her unborn children[1].

80.     Now, for the first time in her life, Plaintiff regularly treats with a psychiatrist who has diagnosed Ms. Rodriguez with Major Depressive Disorder and who also treats Plaintiff for anxiety. In addition, Plaintiff must take regular prescription mental health medications.

81.     As a result of Plaintiff's degraded mental health caused by Defendant's unlawful conduct, Plaintiff nearly lost custody of her children.

82.     Plaintiff has been petrified of returning to the work force, fearing that she will once again be abused by any future employer.

**CLAIMS FOR RELIEF**
**AS AND FOR A FIRST CAUSE OF ACTION**
*(Gender/Pregnancy Discrimination in violation of the New York State Human Rights Law)*

83.     Plaintiff repeats and re-alleges each and every allegation above with the same force and effect as if fully set forth herein.

84.     Plaintiff, at all times relevant to this complaint, was a pregnant female and therefore a member of a protected class.

85.     Plaintiff was qualified to work as an employee for Defendant and she satisfactorily performed the duties required by the position she held with Defendant.

---

[1] Plaintiff notes that since her termination, Plaintiff has given birth.

86.     As set forth in detail above and herein, Defendant subjected Plaintiff to discrimination by virtue of subjecting Plaintiff to disparate treatment and a hostile work environment on the basis of her gender/pregnancy.

87.     The discrimination Plaintiff suffered while employed for Defendant was severe and pervasive, unwelcome by Plaintiff, and would be offensive to a reasonable person.

88.     The discrimination that Plaintiff suffered while employed by Defendant severely affected the terms and conditions of her employment.

89.     As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her rights to be free from discrimination, and great humiliation, which has manifested in serious emotional stress and physical illness.

90.     As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself and her family, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

91.     Accordingly, Defendant discriminated against Plaintiff on the basis of her pregnancy, and subjected Plaintiff to disparate treatment and a hostile work in violation of the New York State Human Rights Law.

92.     As a result of Defendant's violations of Plaintiff's statutory rights, Plaintiff has been damaged in an amount to be determined at trial.

13

## AS AND FOR A SECOND CAUSE OF ACTION
*(Gender/Pregnancy Discrimination in violation of the Pregnancy Discrimination Act)*

93.    Plaintiff repeats and re-alleges each and every allegation above with the same force and effect as if fully set forth herein.

94.    Plaintiff, at all times relevant to this complaint, was a pregnant female and therefore a member of a protected class.

95.    Plaintiff was qualified to work as an employee for Defendant and she satisfactorily performed the duties required by the position she held with Defendant.

96.    As set forth in detail above and herein, Defendant subjected Plaintiff to discrimination by virtue of subjecting Plaintiff to disparate treatment and a hostile work environment on the basis of her gender/pregnancy.

97.    The discrimination Plaintiff suffered while employed for Defendant was severe and pervasive, unwelcome by Plaintiff, and would be offensive to a reasonable person.

98.    The discrimination that Plaintiff suffered while employed by Defendant severely affected the terms and conditions of her employment.

99.    As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her rights to be free from discrimination, and great humiliation, which has manifested in serious emotional stress and physical illness.

100.    As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself and her family, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her good reputation,

disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

101.    Accordingly, Defendant discriminated against Plaintiff on the basis of her pregnancy, and subjected Plaintiff to disparate treatment and a hostile work in violation of the Pregnancy Discrimination Act.

102.    As a result of Defendant's violations of Plaintiff's statutory rights, Plaintiff has been damaged in an amount to be determined at trial.

## AS AND FOR A THIRD CAUSE OF ACTION
*(Gender/Pregnancy Discrimination in violation of the New York City Human Rights Law)*

103.    Plaintiff repeats and re-alleges each and every allegation above with the same force and effect as if fully set forth herein.

104.    Plaintiff, at all times relevant to this complaint, was a pregnant female and therefore a member of a protected class.

105.    Plaintiff was qualified to work as an employee for Defendant and she satisfactorily performed the duties required by the position she held with Defendant.

106.    As set forth in detail above and herein, Defendant subjected Plaintiff to discrimination by virtue of subjecting Plaintiff to disparate treatment and a hostile work environment on the basis of her gender/pregnancy.

107.    The discrimination Plaintiff suffered while employed for Defendant was severe and pervasive, unwelcome by Plaintiff, and would be offensive to a reasonable person.

108.    The discrimination that Plaintiff suffered while employed by Defendant severely affected the terms and conditions of her employment.

109.     As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her rights to be free from discrimination, and great humiliation, which has manifested in serious emotional stress and physical illness.

110.     As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself and her family, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

111.     Accordingly, Defendant discriminated against Plaintiff on the basis of her pregnancy, and subjected Plaintiff to disparate treatment and a hostile work in violation of the New York City Human Rights Law.

112.     As a result of Defendant's violations of Plaintiff's statutory rights, Plaintiff has been damaged in an amount to be determined at trial.

### AS AND FOR A FOURTH CAUSE OF ACTION
*(Disability Discrimination in violation of the Americans with Disabilities Act of 1990)*

113.     Plaintiff repeats and re-alleges each and every allegation above with the same force and effect as if fully set forth herein.

114.     Plaintiff, at all times relevant to this complaint, was a pregnant female and therefore a member of a protected class.

115.     Plaintiff's pregnancy was diagnosed as "high-risk" by her treating physician.

116.    Plaintiff's high-risk pregnancy substantially limited her ability to perform and partake in everyday activities.

117.    Further, Plaintiff's high-risk pregnancy negatively affected her ability to work anywhere without the allotment of reasonable accommodations to perform her job responsibilities.

118.    Accordingly, Plaintiff was "disabled" within the meaning of the ADA.

119.    Plaintiff was qualified to work as an employee for Defendant, was ready willing and able to perform the essential functions of her job with reasonable accommodations.

120.    Plaintiff satisfactorily performed the duties required by the position she held with Defendant despite Defendant's refusal to provide her with reasonable accommodations for her high-risk pregnancy.

121.    As set forth in detail above and herein, Defendant was aware and on notice of Plaintiff's disability (i.e. her high-risk pregnancy). Plaintiff duly requested reasonable accommodations from Defendant, which were mandated and outlined by her treating physician. Upon information and belief, Defendant would not have been unduly burdened by granting Plaintiff her reasonable accommodations.

122.    In response to Plaintiff's request for accommodations, Defendant laughed at and mocked Plaintiff. Defendant refused to allow Plaintiff any reasonable accommodations and further subjected Plaintiff to a more stressful and hostile work environment.

123.    Defendant failed to accommodate Plaintiff's disability and failed to engage in any interactive process with Plaintiff.

124.    As a further direct and proximate result of Defendant's unlawful employment practices, Plaintiff has suffered extreme mental anguish which has manifested in physical symptoms, outrage, severe anxiety about her future, harm to her physical well-being and health,

17

painful embarrassment among her family, friends, and co-workers, damage to her personal and professional reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

125.    Accordingly, Defendant discriminated against Plaintiff by virtue of failing to accommodate her known disability and failing to engage in an interactive process in violation of the Americans with Disabilities Act.

126.    As a result of Defendant's violations of Plaintiff's statutory rights, Plaintiff has been damaged in an amount to be determined at trial.

## AS AND FOR A FIFTH CAUSE OF ACTION
*(Disability Discrimination in Violation of the New York State Human Rights Law)*

127.    Plaintiff repeats and re-alleges each and every allegation above with the same force and effect as if fully set forth herein.

128.    Plaintiff, at all times relevant to this complaint, was a pregnant female and therefore a member of a protected class.

129.    Plaintiff's pregnancy was diagnosed as "high-risk" by her treating physician.

130.    Plaintiff's high-risk pregnancy substantially limited her ability to perform and partake in everyday activities.

131.    Further, Plaintiff's high-risk pregnancy negatively affected her ability to work anywhere without the allotment of reasonable accommodations to perform her job responsibilities.

132.    Accordingly, Plaintiff had a medically diagnosable impairment and was therefore "disabled" within the meaning of the SHRL.

133.    Plaintiff was qualified to work as an employee for Defendant, was ready willing and able to perform the essential functions of her job with reasonable accommodations.

18

134.   Plaintiff satisfactorily performed the duties required by the position she held with Defendant despite Defendant's refusal to provide her with reasonable accommodations for her high-risk pregnancy.

135.   As set forth in detail above and herein, Defendant was aware and on notice of Plaintiff's disability (i.e. her high-risk pregnancy). Plaintiff duly requested reasonable accommodations from Defendant, which were mandated and outlined by her treating physician. Upon information and belief, Defendant would not have been unduly burdened by granting Plaintiff her reasonable accommodations.

136.   In response to Plaintiff's request for accommodations, Defendant laughed at and mocked Plaintiff. Defendant refused to allow Plaintiff any reasonable accommodations and further subjected Plaintiff to a more stressful and hostile work environment.

137.   Defendant failed to accommodate Plaintiff's disability and failed to engage in any interactive process with Plaintiff.

138.   As a further direct and proximate result of Defendant's unlawful employment practices, Plaintiff has suffered extreme mental anguish which has manifested in physical symptoms, outrage, severe anxiety about her future, harm to her physical well-being and health, painful embarrassment among her family, friends, and co-workers, damage to her personal and professional reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

139.   Accordingly, Defendant discriminated against Plaintiff by virtue of failing to accommodate her known disability and failing to engage in an interactive process in violation of the New York State Human Rights Law.

140.    As a result of Defendant's violations of Plaintiff's statutory rights, Plaintiff has been damaged in an amount to be determined at trial.

## AS AND FOR A SIXTH CAUSE OF ACTION
*(Disability Discrimination in Violation of the New York City Human Rights Law)*

141.    Plaintiff repeats and re-alleges each and every allegation above with the same force and effect as if fully set forth herein.

142.    Plaintiff, at all times relevant to this complaint, was a pregnant female and therefore a member of a protected class.

143.    Plaintiff's pregnancy was diagnosed as "high-risk" by her treating physician.

144.    Plaintiff's high-risk pregnancy substantially limited her ability to perform and partake in everyday activities.

145.    Further, Plaintiff's high-risk pregnancy negatively affected her ability to work anywhere without the allotment of reasonable accommodations to perform her job responsibilities.

146.    Accordingly, Plaintiff had a medically diagnosable impairment and was therefore "disabled" within the meaning of the CHRL.

147.    Plaintiff was qualified to work as an employee for Defendant, was ready willing and able to perform the essential functions of her job with reasonable accommodations.

148.    Plaintiff satisfactorily performed the duties required by the position she held with Defendant despite Defendant's refusal to provide her with reasonable accommodations for her high-risk pregnancy.

149.    As set forth in detail above and herein, Defendant was aware and on notice of Plaintiff's disability (i.e. her high-risk pregnancy). Plaintiff duly requested reasonable accommodations from Defendant, which were mandated and outlined by her treating physician.

Upon information and belief, Defendant would not have been unduly burdened by granting Plaintiff her reasonable accommodations.

150.    In response to Plaintiff's request for accommodations, Defendant laughed at and mocked Plaintiff. Defendant refused to allow Plaintiff any reasonable accommodations and further subjected Plaintiff to a more stressful and hostile work environment.

151.    Defendant failed to accommodate Plaintiff's disability and failed to engage in any interactive process with Plaintiff.

152.    As a further direct and proximate result of Defendant's unlawful employment practices, Plaintiff has suffered extreme mental anguish which has manifested in physical symptoms, outrage, severe anxiety about her future, harm to her physical well-being and health, painful embarrassment among her family, friends, and co-workers, damage to her personal and professional reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

153.    Accordingly, Defendant discriminated against Plaintiff by virtue of failing to accommodate her known disability and failing to engage in an interactive process in violation of the New York City Human Rights Law.

154.    As a result of Defendant's violations of Plaintiff's statutory rights, Plaintiff has been damaged in an amount to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE,** for the foregoing reasons, it is specifically requested that this Court grant Plaintiff judgment as follows:

(i)     On the First Cause of Action, awarding Plaintiff compensatory and other damages including punitive damages in an amount to be determined at trial but in any case no less than $500,000;

(ii)   On the Second Cause of Action, awarding Plaintiff compensatory damages and other damages including punitive damages in an amount to be determined at trial but in any case no less than $500,000;

(iii)  On the Third Cause of Action, awarding Plaintiff compensatory damages and other damages including punitive damages in an amount to be determined at trial but in any case no less than $500,000;

(iv) On the Fourth Cause of Action, awarding Plaintiff compensatory damages and other damages including punitive damages in an amount to be determined at trial but in any case no less than $500,000; and

(v)   Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees, together with such other and further relief as this court deems equitable, proper, and just.

**Dated: New York, New York**
       **October 20, 2017**

                    **NESENOFF & MILTENBERG, LLP.**
                    **Attorneys for Plaintiff**

              **By:**   */s/ Megan Goddard*
                    **Megan S. Goddard, Esq.**
                    **Gabrielle M. Vinci, Esq.**
                    **363 Seventh Avenue, Fifth Floor**
                    **New York, New York 10001**
                    **212.736.4500**

## VERIFICATION

STATE OF NEW YORK            )
                             ) ss.:
COUNTY OF NEW YORK           )


**MARLBELIS RODRIGUEZ,** being duly sworn, deposes and says:

1. I am the Plaintiff named in this matter.

2. I have had the annexed Verified Complaint translated for me into my native language (Spanish) and have reviewed the translated Verified Complaint.

3. I have personal knowledge of the contents of the annexed Verified Complaint, and the contents thereof are true to my knowledge, except as to matters alleged upon information and belief and as to those matters, I, in good faith, believe them to be true.

**MARLBELIS RODRIGUEZ**

Sworn to and subscribed before me
this 20 day of October, 2017.

_____
**NOTARY PUBLIC**

GABRIELLE M. VINCI
Notary Public, State of New York
Registration #02VI6333133
Qualified In Nassau County
Commission Expires Nov. 16, 2019